IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| THE ASSOCIATED PRESS, STATES NEWSROOM d/b/a Indiana Capital Chronicle, GANNETT CO., INC., CIRCLE CITY BROADCASTING I, LLC, and TEGNA INC., <br><br> *Plaintiffs-Appellants*, <br><br> v. <br><br> RON NEAL, and LLOYD ARNOLD, *in their official capacities*, <br><br> *Defendants-Appellees*. | No. 25-2025 |

## APPELLANTS' STATUS REPORT

Appellants, The Associated Press, States Newsroom d/b/a The Indiana Capital Chronicle, Gannett Co., Inc., Circle City Broadcasting I, LLC, and TEGNA INC. (collectively, the "Media Coalition"), respectfully submit the below report to apprise the Court on the status of this appeal:

1. This appeal is taken from the district court's denial of Appellants' Motion for Preliminary Injunction, which was sought to temporarily prevent Appellees from enforcing Indiana Code § 35-38-6-6(a) ("Section 6(a)") and Indiana State Prison Facility Directive ISP 06-26: Execution of Death Sentence, Sec. C (June 17, 2024) ("ISP 06-26") against the Media Coalition and to require that Appellees be permitted to attend executions carried out by the State of Indiana that occur before

judgment is entered in this case. *Associated Press v. Neal,* No. 25-cv-872 (S.D. Ind.), ECF 36 (Order); ECF 19 (Motion for Preliminary Injunction).

2. After this appeal was initiated, the State of Indiana moved the Indiana Supreme Court for an order setting an execution date for Roy Lee Ward, who was convicted and sentenced to death in 2007. On July 7, the Indiana Supreme Court issued an order setting a schedule for briefing on the State of Indiana's motion. Order, *Roy Lee Ward v. Indiana*, No. 25S-SD-167, at 1 (Ind. Jul. 7, 2025). The Indiana Supreme Court further provided that "out of respect for all parties with important responsibilities in this process, we identify now our *tentative* date for the execution as Friday, October 10, 2025, if we grant the State's motion." *Id.* Ward's response was filed July 30, 2025, and the State's reply was filed August 11. On August 18, Ward filed a motion requesting permission to file a surresponse to the State's August 11 reply.

3. In addition, on July 30, 2025, Ward filed a request for the Indiana Supreme Court to hear a successive petition for post-conviction relief. On August 11, 2025, the State of Indiana submitted a response to Ward's request. On August 18, 2025, Ward filed a reply in support of his successive petition for post-conviction relief.

4. On July 28, 2025, Appellants submitted a Motion for Case Management Conference in order to discuss the logistics and potential schedule for hearing and

deciding this appeal, given the State of Indiana's motion to the Indiana Supreme court requesting that it set an execution date for Ward. On July 30, 2025, the Court entered an order stating that Appellants' Motion for Case Management Conference would be filed without court action and that "[a]ny request to schedule Rule 33 mediation should be made directly with the Circuit Mediation Office." Appellants spoke with the Circuit Mediation Office, which advised that while it could not set a case management conference, Appellants should endeavor to keep the Court updated on related developments at the Indiana Supreme Court by filing periodic status reports.

5. On August 17, 2025, Appellants submitted an initial status report updating the Court on the above-described developments.

6. On August 27, 2025, the Indiana Supreme Court set Ward's execution date for October 10 and denied his motion seeking leave to file a successive petition for post-conviction relief. Order Setting Execution Date and Denying Leave to Seek Successive Post-Conviction Relief, *Roy Lee Ward v. Indiana*, No. 25S-SD-167 (Ind. Aug. 27, 2025) (attached hereto as Weeks Declaration Attachment A).

7. Accordingly, Ward's execution will occur "before the hour of sunrise" on October 10. Ind. Code § 35-38-6-1(b). Appellants respectfully request that this Court take this development into account in setting oral argument for this matter.

3

8. Appellants have conferred with Appellees regarding the schedule for argument; Appellees stated that they "have no position that needs to be communicated to the Court" through Appellants' status report. Appellees today filed a notice representing that their attorney of record expected he would "be in fast-paced litigation during the week before and during Ward's execution," although no case name or docket number of any pending litigation was provided. ECF No. 24. Appellees further represented that their counsel of record would be "unavailable to argue this case in the week after the execution." *Id.*

Dated: September 2, 2025

Respectfully submitted,

*/s/ Lin Weeks*
Lin Weeks
   *Counsel of Record*
REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
(202) 795-9300
lweeks@rcfp.org

Kristopher L. Cundiff
REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
P.O. Box 150
Fishers. IN 46038
(463) 271-4676
kcundiff@rcfp.org

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies under Fed. R. App. P. 32(g) that the foregoing status report meets the formatting and type-volume requirements set by Fed. R. App. P. 27(d) and Fed. R. App. P. 32(a). This status report is printed in 14 point, proportionately-spaced typeface utilizing Microsoft Word and contains 631 words, including headings, footnotes, and quotations, and excluding all items identified under Fed. R. App. P. 32(f).

Dated: September 2, 2025

/s/Lin Weeks
Lin Weeks
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| THE ASSOCIATED PRESS, STATES NEWSROOM d/b/a Indiana Capital Chronicle, GANNETT CO., INC., CIRCLE CITY BROADCASTING I, LLC, and TEGNA INC.,<br><br>    *Plaintiffs-Appellants*,<br><br>v.<br><br>RON NEAL, and LLOYD ARNOLD, *in their official capacities*,<br><br>    *Defendants-Appellees*. | No. 25-2025 |

## DECLARATION OF LIN WEEKS IN SUPPORT OF APPELLANTS' STATUS REPORT

I, Lin Weeks, state as follows:

1. I am a member of the bar of this Court and counsel of record for Appellants in this matter.

2. **Attachment A** hereto is a true and correct copy of an August 27, 2025 order entered by the Indiana Supreme Court in *Roy Lee Ward v. Indiana*.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 2, 2025

                                                                   */s/ Lin Weeks*
                                                                    Lin Weeks

# Attachment A

# In the
# Indiana Supreme Court

Roy Lee Ward,
    Appellant,

v.

State of Indiana,
    Appellee.

Supreme Court Case Nos.
74S00-0907-PD-320
25S-SD-167

Trial Court Case No.
74C01-0107-CF-158



FILED
Aug 27 2025, 11:53 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

## Order Setting Execution Date and
## Denying Leave to Seek Successive Post-Conviction Relief

After completing a direct appeal, a post-conviction appeal, and federal habeas corpus proceedings, Roy Lee Ward remains sentenced to death for the rape and murder of Stacy Payne. By counsel, Ward has filed a request with this Court asking us to grant permission for him to file a successive Petition for Post-Conviction Relief. The State opposes Ward's request and asks us to set an execution date for Ward's death sentence. We have exclusive jurisdiction over this matter. *See* Ind. Appellate Rule 4(A)(1)(a).

### Background and Procedural History

In July 2001, Ward went to the Payne residence in Dale, Indiana, where he convinced fifteen-year-old Stacy to let him inside. Stacy's younger sister, Melissa, was napping upstairs and awoke to Stacy's screams. From the top of the stairs, Melissa saw a man on top of Stacy while Stacy screamed and pleaded for the man to stop. Melissa ran to her parents' bedroom and called 911.

When a town marshal arrived, he saw Ward standing in a doorway inside the house, holding a knife. After ordering Ward to the ground and handcuffing him, the marshal went into the kitchen. He found Stacy lying on the floor in a massive pool of blood, naked from the waist down, conscious, with her intestines exposed. Stacy could not speak, but she nodded in response to medical personnel's questions. The local hospital was not equipped to treat Stacy's extensive injuries, which included a lacerated abdomen, a laceration to her back that severed her spine, and a lacerated trachea. Stacy was flown by helicopter to the University of Louisville Hospital, where she died roughly five hours after Ward entered her house. Her autopsy revealed eighteen blunt force injuries. The State sought the death penalty based on four aggravators: (1) intentionally killing the victim while committing rape; (2) intentionally killing the victim while committing criminal deviate conduct; (3) committing murder while on probation for committing a felony; and (4) mutilating or torturing the victim while she was still alive. The State later amended the charging information to add one count each of Class A felony rape and Class A felony criminal deviate conduct.

In 2002, a jury convicted Ward as charged, and the trial court imposed the recommended death sentence. Ward challenged his conviction on one issue—whether the trial court abused its discretion when it denied his motion for change of venue—and this Court reversed and remanded for a new trial in *Ward v. State*, 810 N.E.2d 1042 (Ind. 2004). On remand, Ward pleaded guilty to the rape and murder charges; the jury again recommended the death sentence; and the trial court imposed that sentence accordingly. Ward appealed again, and we affirmed his conviction and sentence. *Ward v. State*, 903 N.E.2d 946 (Ind.), *aff'd on reh'g at* 908 N.E.2d 595 (Ind. 2009), *cert. denied*, 559 U.S. 1038 (2010).

Ward then sought post-conviction relief. The post-conviction court denied relief and Ward appealed. This Court affirmed in *Ward v. State*, 969 N.E.2d 46 (Ind. 2012), *reh'g denied*, and set a December 11, 2012 execution date, subject to a federal stay.

On December 4, 2012, the U.S. District Court for the Southern District of Indiana stayed Ward's execution date after Ward sought federal habeas relief. But the district court denied Ward's petition and dismissed the action with prejudice in *Ward v. Wilson*, No. 3:12-cv-00192-RLY-WGH, 2015 WL 5567180 (S.D. Ind. Sept. 22, 2015). The 7th Circuit affirmed that denial in *Ward v. Neal*, 835 F.3d 698 (7th Cir. 2016), *reh'g denied, reh'g en banc denied*, and the U.S. Supreme Court denied certiorari in *Ward v. Neal*, 581 U.S. 995 (2017), which closed Ward's federal habeas proceedings.

## I.     Ward's Motion for Leave to Seek Successive Post-Conviction Relief

Ward now seeks leave to file a Successive Petition for Post-Conviction Relief under Post-Conviction Rule 1(12)(a). The State filed a response opposing the request, and Ward has tendered a reply, which he seeks leave to file. The Court GRANTS Ward's "Motion for Leave to File Reply and Extend the Page Limit" and "Motion to Correct Reply in Support of Successive Petition for Post-Conviction Relief" and directs the Clerk to file Ward's corrected reply brief, tendered August 21, 2025, and exhibits, tendered July 30 and August 21, 2025, as of the date of this order. But having thoroughly reviewed the parties' submissions, we deny Ward's request to seek successive post-conviction relief.

Ward's petition sets forth several prospective claims that he seeks to litigate in post-conviction proceedings, including that (1) the State's failure to answer Ward's public records requests about its lethal injection protocol and the drugs it intends to use to carry out his execution obstructs his ability to challenge the constitutionality of his execution; (2) the State's failure to respond to Ward's public records requests violates his procedural and substantive due process rights under the Fourteenth Amendment to the United States Constitution and Article 1, Section 12 of the Indiana Constitution; (3) problems during Benjamin Ritchie's execution in May 2025 present a substantial risk that Ward will suffer severe pain during his execution in violation of the Eighth Amendment and Article 1, Section 16 of the Indiana Constitution; (4) the execution chamber's one-way glass will block Ward's view of his witnesses, preventing him from knowing whether the Department of Correction has complied with his statutory right to have his own witnesses present and violating his due process rights under the U.S. and Indiana Constitutions; and (5) the State's action in preventing sound from emanating from the execution chamber violates

Ward's right to access governmental proceedings under the First Amendment and Article 1, Sections 1 and 9 of the Indiana Constitution.

Under Post-Conviction Rule 1(1)(e), a petition, such as Ward's, that seeks "to present new evidence challenging the person's guilt or the appropriateness of the person's sentence" in a capital proceeding is considered a successive petition for post-conviction relief. To authorize Ward's filing of his successive petition, he must establish a "reasonable possibility" that he is entitled to "post-conviction relief." Ind. Post-Conviction Rule 1(12)(b). He has not met that burden.

Each of Ward's claims purport to present new evidence on the State's chosen execution protocol. But—critical to our decision—none of his claims challenge the validity of his convictions or his sentence. And one of the central limitations of our Post-Conviction Rules "is that relief is generally available only from a conviction or sentence." *Kirby v. State*, 95 N.E.3d 518, 520 (Ind. 2018); *see also* P-C.R. 1(7) (recognizing that post-conviction relief results in an "appropriate order with respect to the conviction or sentence in the former proceedings"). Ward does not seek relief from his death sentence but only from the method by which that sentence is carried out. *Cf. Nance v. Ward*, 597 U.S. 159, 172 (2022) (holding that an action under 42 U.S.C. § 1983, not habeas, is the proper vehicle for method-of-execution challenges). Ward may have other, viable avenues in state or federal court to seek relief on his claims, and he could request a stay of execution from our Court, *see* Ind. Code § 35-50-2-9(h) ("The supreme court has exclusive jurisdiction to stay the execution of a death sentence."), or a federal court if such litigation is commenced. But because he seeks to litigate his claims only in post-conviction proceedings and none of them attack the validity of his convictions or the sentence imposed, he has not established a reasonable possibility that he is entitled to post-conviction relief.

## II.     State's Motion to Set Execution Date

On June 27, 2025, the State filed its "Verified Motion to Set Execution Date" and stated the following in support: (1) Ward has no further grounds for state or federal courts to review whether his convictions or sentence are valid; and (2) there is no active stay preventing his execution. Ward's response to the State's motion asked this Court to recall the tentative execution date set in our July 7 order to allow him to pursue his challenges to the execution method. In reply, the State asserted that Ward's claims were irrelevant to this Court's legal duty to set an execution date. Ward tendered a surresponse, which he seeks leave to file. The Court GRANTS Ward's "Motion for Leave to File Surresponse" and directs the Clerk to file Ward's surresponse as of the date of this order.

Again, while Ward may have other avenues to challenge the execution method or protocol, we agree with the State that a response to a "Motion to Set Execution Date" is not one of them. Being duly advised, the Court finds there is no stay of execution now in effect and we must complete our administrative task to set an execution date under Indiana Code section 35-50-2-9(h) and Criminal Rule 6.1(G)(1).

It is ORDERED that execution of the death sentence imposed on Roy Lee Ward be carried out on **Friday, October 10, 2025**, before the hour of sunrise. This order constitutes the warrant for execution described in Indiana Code sections 35-38-6-2, -3, and -8. The superintendent of the

Indiana State Prison is directed to carry out the execution in accordance with law.

Done at Indianapolis, Indiana, on  8/27/2025  .

*Loretta H. Rush*
Loretta H. Rush
Chief Justice of Indiana

All Justices concur except Goff, J., who concurs in part and dissents in part with separate opinion.

**Goff, J., concurring in part, dissenting in part.**

On June 27, 2025, the State filed a Verified Motion to Set Execution Date for Roy Lee Ward. After granting Ward an extension of time to file a response, this Court issued an order setting a tentative execution date of October 10, 2025. On July 30, Ward filed his response opposing the State's motion to set an execution date and a motion seeking leave to file a successive PCR petition. After reviewing the State's responses and additional submissions from the parties, the Court today (1) denies Ward's request to seek successive PCR relief and (2) confirms the execution date of October 10, 2025.

First, Ward seeks records from the State related to the lethal-injection protocol, claiming the protocol may amount to cruel-and-unusual punishment. I dissent from the Court's order setting an execution date and denying successive PCR as to the lethal-injection issue. This Court should set an execution date after the records request is resolved, so Ward can effectively raise any constitutional issues. Second, Ward argues that the soundproofing and one-way glass in the execution chamber amount to cruel-and-unusual punishment and violate his due-process rights. While this procedure limits transparency, Ward has failed to show that it violates his constitutional rights. I concur with the Court's order denying Ward's request to seek successive PCR as to issues related to the execution chamber itself.

# I. The Court should set an execution date after Ward's APRA requests are addressed.

In 1995, the General Assembly adopted lethal injection as the sole method of capital punishment in the state. Pub. L. No. 294-1995, § 1, 1995 Ind. Acts 4145, 4145–46 (codified as amended at Ind. Code § 35-38-6-1). In the years that followed, Indiana (as with most states that use lethal injection) came to rely on a three-drug cocktail to carry out its executions. This combination consisted of (1) sodium thiopental, a sedative to render the condemned unconscious; (2) pancuronium bromide, a paralytic agent

to induce suffocation; and (3) potassium chloride, which ultimately triggers cardiac arrest. Amber Widgery, Nat'l Conf. of State Legislators, The State of Capital Punishment 1–2 (2019). In 2008, the United States Supreme Court upheld this drug combination, and "substantially similar" ones, against a constitutional challenge under the Eighth Amendment's cruel-and-unusual clause. *Baze v. Rees*, 553 U.S. 35, 61 (2008).

But soon after the *Baze* decision, the pharmaceutical landscape shifted radically. In 2011, the sole U.S. manufacturer of sodium thiopental ceased production of the drug, creating a dire shortage nationwide. Deborah W. Denno, *Lethal Injection Chaos Post-Baze*, 102 Geo. L.J. 1331, 1360–61 (2014). That same year, the European Union imposed export restrictions on the sale of sodium thiopental (along with other execution drugs), further deepening the supply crisis. Mary D. Fan, *The Supply-Side Attack on Lethal Injection and the Rise of Execution Secrecy*, 95 B.U. L. Rev. 427, 440 (2015). To cope with this sourcing problem, states began to experiment with new execution drugs, including pentobarbital. Robin Konrad, Death Penalty Information Center, Behind the Curtain: Secrecy and the Death Penalty in the United States 10 (2018).

In May 2025, the State executed Benjamin Ritchie using pentobarbital for its one-drug lethal-injection protocol.[1] According to Ward, several witnesses to the execution recounted how Ritchie lurched upward against his restraints in a sudden and startling reaction. Such a reaction, Ward insists, was inconsistent with the normal effects of unadulterated pentobarbital.

Based on this anecdotal evidence, Ward believes that pentobarbital creates a substantial risk of needless pain and suffering. And he argues that public statements made by the governor suggest the drug may be

---

[1] Casey Smith, *State Executes Death Row Inmate Benjamin Ritchie for Fatal Shooting of Police Officer*, Indiana Capital Chronicle (May 20, 2025), https://indianacapitalchronicle.com/2025/05/20/state-executes-death-row-inmate-benjamin-ritchie-for-fatal-shooting-of-police-officer/#:~:text=By:%20Casey%20Smith%20%2D%20May%2020,shortly%20after%20the%20process%20began.

expired, bolstering his claim.[2] Shortly after, the governor clarified the drugs used in recent executions were not expired.[3] Still, Ward—fearing the State may execute him using the same one-drug protocol—has made multiple public-records requests from the Department of Correction (DOC), seeking to uncover how the drug is transported, stored, and tested for quality and contamination. To date, however, the DOC has failed to provide Ward with the requested records. And this failure, Ward argues in his request to file successive PCR, deprives him of the information he needs to challenge his sentence as cruel and unusual under the Eighth Amendment to the United States Constitution and Article 1, Section 16 of the Indiana Constitution.

I would exercise discretion to set Ward's execution date after the DOC responds to his request for records—an especially prudent approach, in my view, given the need for time to investigate the viability of his claim, which ripened only when we set a tentative execution date. *Cf. Corcoran v. State*, 246 N.E.3d 782, 800 (Ind. 2024) (observing that a "claim challenging competency for execution is not ripe until the execution is scheduled"); *Isom v. State*, 170 N.E.3d 623, 653 (Ind. 2021) (citing lack of cogent legal argument to affirm post-conviction court's denial of petitioner's discovery request for the state's lethal-injection protocol because the state had set "no execution date" and "did not know which substances or method would be used to execute him"). To effectively "challenge experimental or demonstrably inappropriate drug protocols or other dangerous execution practices, prisoners need all relevant information about their executions."

---

[2] Casey Smith, *Braun Says Indiana is Out of Execution Drugs, Signals Willingness to Debate Capital Punishment*, Indiana Capital Chronicle (June 4, 2025), https://indianacapitalchronicle.com/2025/06/04/braun-says-indiana-is-out-of-execution-drugs-signals-willingness-to-debate-capital-punishment/ ("Governor Braun also said the State of Indiana does not intend to buy more, 'at least not for now.'").

[3] *See* Casey Smith, *Braun Clarifies Indiana Acquisition of Execution Drugs; Reveals More Than $1M Spent*, Indiana Capital Chronicle (June 24, 2025), https://indianacapitalchronicle.com/2025/06/24/braun-clarifies-indiana-acquisition-ofexecution-drugs-reveals-more-than-1m-spent/ ("Braun emphasized Tuesday, however, that neither of the doses used by the Indiana Department of Correction in December and May were expired when administered to inmates.").

Konrad, *supra*, at 7. Lack of full transparency "frustrates the judicial process by unfairly limiting prisoners' ability to prevent potentially unconstitutional executions." *Id.*

The Access to Public Records Act (APRA) provides Ward a procedure for judicial review if the State is wrongfully withholding records. I.C. § 5-14-3-9(e). Although Indiana law shields from disclosure information "reasonably calculated to lead to the identity" of the lethal-injection drug supplier, I.C. § 35-38-6-1(f), Ward has requested no such information. If the State is required to disclose the records, and if the records show the one-drug protocol may be cruel-and-unusual punishment, Ward may have a path to relief. Setting an execution date before the APRA issue is resolved gives the DOC no incentive to expedite the APRA proceedings, effectively allowing death by delay.

What's more, as our legislature has recognized, Hoosiers have a strong interest to "full and complete information regarding the affairs of government." *See* I.C. § 5-14-3-1 (governing access to public records). After all, an informed public debate is critical in determining whether execution by lethal injection comports with "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958). Allowing Ward's execution to proceed without requiring the DOC to disclose the requested records "not only prevents the public from having robust, informed, and honest discussion about the death penalty, it also makes public oversight impossible." Konrad, *supra*, at 7; *see also* American Bar Association, Execution Transparency Resolution at 12 (2015) (urging jurisdictions that impose capital punishment to ensure that their execution protocols are "subject to public review and commentary, and include all major details regarding the procedures to be followed, the qualifications of the execution team members, *and the drugs to be used*") (emphasis added).

## II. Ward fails to demonstrate how the soundproofing and one-way glass in the execution chamber violate his constitutional rights.

Second, Ward argues that the soundproofing and one-way glass in the execution chamber that will prevent him from seeing and hearing witnesses amount to cruel-and-unusual punishment and violate his due-process rights.

Historically, the United States carried out its executions publicly to deter crime, though society has tolerated some limited secrecy—*e.g.*, by protecting the executioner's identity. Konrad, *supra*, at 9. During the nineteenth century, states began shielding the public from executions by carrying them out behind prison walls. State "private" execution laws were designed in part to "avoid a spectacle and to afford a certain amount of dignity to the prisoner." *Id.*

Ward claims that preventing him from seeing "his witnesses" (rather than the victim's witnesses) imposes "unnecessary and cumulative mental pain and torment because it deprives [him] of the comfort of seeing and connecting with those closest to him as he is executed without serving any legitimate state interest." Successive Pet. for PCR at 17; *see Hall v. Florida*, 572 U.S. 701, 708 (2014) ("By protecting even those convicted of heinous crimes, the Eighth Amendment reaffirms the duty of the government to respect the dignity of all persons.").

While the limited access to sight and sound in the execution chamber limits transparency in execution proceedings, Ward's claim falls short of establishing cruel-and-unusual punishment. The inability to see and hear witnesses does not create an "objectively intolerable risk of harm," *see Baze*, 553 U.S. at 61–62, or an "unacceptable risk of pain," *see Glossip v. Gross*, 576 U.S. 863, 884 (2015). Ward also has no due-process right to view witnesses during the execution. *See Holden v. Minnesota*, 137 U.S. 483, 491 (1890) (preventing persons from viewing an execution does not affect the substantial rights of the condemned). And Ward does not have standing on behalf of witnesses to argue their First Amendment right to access

government proceedings is violated by soundproofing the execution chamber. Ward will be able to hear the execution procedure.

## III. The proper procedural vehicle for resolving Ward's claim depends on whether Ward seeks a different execution method or to set aside his death sentence.

If the State is required to disclose the records under APRA, and if the records show the one-drug protocol may be cruel-and-unusual punishment, Ward can make a subsequent civil-rights claim *or* request to file a successive PCR petition, depending on the relief he seeks. If he seeks to use the three-drug cocktail or another method of execution, then he can bring his claim as a civil-rights suit like a Section 1983 claim. If, on the other hand, he seeks to set aside his death sentence because the execution method is cruel-and-unusual punishment, he can bring a successive PCR petition.

The post-conviction rules permit challenges to a "conviction or sentence." Ind. Post-Conviction Rule 1(1)(a). "If the court finds in favor of the petitioner, it shall enter an appropriate order with respect to the conviction or sentence in the *former proceedings*." P-C.R. 1(6) (emphasis added). Therefore, the PCR rules allow this Court to set aside a sentence. If Ward seeks to set aside his death sentence because the method is cruel-and-unusual punishment, post-conviction proceedings provide the proper avenue for relief. The State itself acknowledges that "this Court has traditionally addressed the merits of method-of-execution claims under the Eighth Amendment in the post-conviction context." Resp. in Opp. to Successive PCR at 14 n.1. For example, in *Bieghler v. State*, the Court considered a method-of-execution claim in a post-conviction proceeding. 839 N.E.2d 691, 693 (Ind. 2005). But Bieghler requested his death sentence be set aside because the method amounted to cruel-and-unusual punishment. Br. of Petitioner-Appellant, *Bieghler v. State*, 690 N.E.2d 188 (Ind. 1997) (No. 34S00–9207–PD–583), 1996 WL 34365411, at *144 ("Bieghler requests that his sentence of death be set aside"); *Nance v. Ward*,

597 U.S. 159, 175 (2022) (Barrett, J., dissenting) ("An inmate must bring a method-of-execution challenge in a federal habeas application, rather than under 42 U.S.C. § 1983, if 'a grant of relief to the inmate would necessarily bar the execution.'") (quoting *Hill v. McDonough*, 547 U.S. 573, 583 (2006)). But if Ward seeks a different method of execution, rather than setting aside the execution, then he should bring that claim in a civil-rights action.